# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-00128-SCT

*FAY THORNTON AND ADOLPHUS R. THORNTON*

*v.*

*DONNA RUSHING THORNTON (WELLS)*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/17/96 |
| TRIAL JUDGE: | HON. W. HOLLIS MCGEHEE II |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JOHN H. OTT |
| ATTORNEY FOR APPELLEE: | CLYDE RATCLIFF |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | DIRECT APPEAL: AFFIRMED; CROSS APPEAL: AFFIRMED - 6/5/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/26/97 |

**BEFORE PRATHER, P.J., ROBERTS AND MILLS, JJ.**

**PRATHER, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

On April 14, 1995, Donna Rushing Thornton obtained a divorce from Marvin Thornton in the Chancery Court of Pike County, Mississippi, based on Marvin's incarceration in Amite, Louisiana for his conviction on charges of child molestation. The divorce decree dictated that Marvin have no physical contact with his minor daughters, Nicole and Shelby Lee, but he was granted telephonic visitation under the supervision of Donna. The decree further provided that the issue of Marvin's visitation rights with his children would be revisited upon Marvin's release from prison. Marvin's parents, Fay and Adolphus Thornton, intervened in the divorce action and requested that they be granted visitation rights with their grandchildren pursuant to Miss. Code Ann. § 93-16-1 et seq. The Chancellor denied this motion, finding that the children's best interests would not be served by permitting visitation with their grandparents. The grandparents timely appealed from said ruling.

## STATEMENT OF THE FACTS

Prior to Donna and Marvin's separation on September 3, 1994, Adolphus and Fay had visitation with their grandchildren, with most of those visitations taking place at the grandparents' home in Denham Springs, Louisiana. The frequency of the visits varied greatly, with visitations taking place once every ten days or so during a six month period when the children lived in Baton Rouge. After Donna and Marvin moved to Pike County in Mississippi, in June, 1994, the children had only one visitation with the grandparents prior to Marvin and Donna's separation. Prior to September, 1994, Donna had not objected to Adolphus and Fay visiting their grandchildren, and Donna had personally brought the children to their grandparents for a visitation in June, 1994. Donna's disputes with her parents-in-law arose in large part in connection with Marvin's arrest on charges of child molestation in June, 1994 and his guilty plea to said charges in March, 1995.

Fay testified under cross-examination that she and her husband did not try to learn about the specifics of the criminal charges against Marvin, but she testified that they knew that Marvin was good around children and that they did not believe that he would attempt to harm his children. Fay acknowledged that she no longer communicated with Donna. Fay testified that she and her husband made weekly visits to Marvin in prison, and that they would often carry their other grandchildren with them on these visits.

A dispute arose between the grandparents and Donna when Donna learned that Fay and Adolphus had been secretly tape recording the telephonic visitations between Marvin and his children. The grandparents testified that they recorded the conversations to ensure that the telephonic visitation privileges were in fact complied with, but this issue further contributed to the deterioration of the relationship between Donna and her former parents-in-law.

## ISSUES

### A. Did the chancellor abused his discretion by denying the grandparents any visitation ?

An initial issue before this Court relates to the issue of the standard of review which a Chancellor should apply in deciding whether to deny grandparents the right to visitation with their grandchildren altogether. This Court has held that a parent should not be denied all visitation with his children absent an affirmative finding that said visitation would be harmful to the children. Fay and Adolphus argue that, given that Marvin's parental rights were effectively terminated, they should step in his shoes and be denied visitation rights only if it is determined that said visitation would be harmful to the children.

This Court finds no merit in the grandparents' arguments. It should be obvious that there are fundamental differences between the relationship between a grandparent and his or her grandchildren and between a parent and his or her children. It should also be obvious that a parent is charged with a number of legal duties and responsibilities with regard to the support and rearing of his child with which a grandparent is not faced. Along with these legal duties and responsibilities come rights and privileges, one of which is the right of a parent to visit with his or her child absent some showing that said visitation would be harmful to the child.

The right of a grandparent to visitation with his or her grandchildren, by contrast, is a right based

solely upon and arising from statutory provisions enacted by the Legislature. The grandparent visitation statutes of this State grant grandparents the right to petition for visitation in a wide variety of cases, and said statutes provide that the visitation should be permitted when said visitation is in the best interests of the children. There is no provision in the statutes, however, that the right of a grandparent to visitation should be granted absent a showing of harm to the child, and absent such a provision, this Court does not infer such a right to exist.

**B. The trial court erred by incorrectly applying the grandparents visitation statute to the instant case.**

## CROSS-APPEAL ISSUES

**A. The chancellor properly applied the grandparent visitation statute and did not abuse his discretion in denying visitation.**

The grandparents argue at some length that the provisions of Miss. Code Ann. § 93-16-3 serve to grant them standing to petition for visitation, but this point is actually not even contested by Donna. Donna concedes that the grandparents had the standing to petition to intervene under § 93-16-3(1), but she argues that the Chancellor was within his discretion in ruling that the best interests of Nicole and Shelby Lee were served by denying the grandparents visitation rights. Miss Code Ann. § 93-16-3 provides that:

> Whenever a court of this state enters a decree or order awarding custody of a minor child to one of the parents of the child or terminating the parental rights of one of the parents of a minor child, or whenever one of the parents of a minor child dies, either parent of the child's parents who was not awarded custody or whose parental rights have been terminated or who has died may petition the court in which the decree or order was rendered or, in the case of the death of a parent, petition the chancery court in the county in which the child resides, and seek visitation rights with such child.

Fay and Adolphus argue that, given that the Chancellor ordered that the children be denied any physical contact with Marvin, his parental rights were effectively terminated. Based on this premise, the grandparents argue that §93-16-3 should apply to the facts of the present case, given that this statute permits grandparents to seek visitation rights in cases in which the parental rights of their children have been terminated. However, it is clear from the record that the Chancellor did not terminate Marvin's parental rights, but merely denied him personal visitation with his children during his incarceration. The chancellor specifically reserved the right to revisit the father's visitation rights upon his release from prison.

Donna argues persuasively that § 93-16-3 grants the Chancellor the power to grant visitation if said

visitation is in the best interests of the child. The Legislature clearly intended to grant grandparents standing to intervene for visitation privileges in a wide range of cases, with the determining factor as to whether said visitation should be granted being the best interests of the children. This case thus boils down to a rather standard review of a Chancellor's conclusion regarding the best interests of the grandchildren. This Court agrees with Donna that the Chancellor did not abuse his discretion in denying Adolphus and Fay visitation rights with the children.

It is clear from the testimony of Fay and Adolphus that they have some reservations about the truth of the charges to which Marvin pleaded guilty. During cross-examination, Adolphus indicated that he accepted that his son had done something wrong, but he strongly suggested that he did not accept the charges in their entirety.

Q: Because your son is in the penitentiary now, isn't he ?

A: Well now, yeah.

Q: And he is a pedophile isn't he?

A: What he is and what he isn't, he knows the real story.

It is understandable that Fay and Adolphus would stand by their son, but the fact remains that Marvin has pleaded guilty to charges of grossly violating minor children, and Donna has an understandable desire that her children be disassociated from their natural father and his deeds and criminal propensities.

The Chancellor has, for the time being, seen fit to deny Marvin a substantial role in his children's lives based on his crimes, and said decision appears to be a proper one under the circumstances of the present case.

The Chancellor's ruling is also supported by Adolphus' testimony that the relationship between Donna and him and Fay has become one of extreme animosity. There are great tensions between the grandparents and the mother. The children have had to undergo the trauma of seeing their natural father imprisoned on a conviction for egregious crimes. The Chancellor's ruling need only be supported by substantial evidence in the record that denying the grandparents' visitation was in the best interests of the children. In the view of this Court, the Chancellor's ruling in denying Fay and Adolphus visitation is supported by such substantial evidence and is accordingly affirmed.

**DIRECT APPEAL: JUDGMENT IS AFFIRMED. CROSS-APPEAL: JUDGMENT IS AFFIRMED.**

**SULLIVAN, P.J., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J.**

**McRAE, JUSTICE, DISSENTING:**

In this case, Adolphus and Fay Thornton are being punished for the crimes of their son Marvin. Because I believe that the chancellor abused his discretion in denying visitation privileges to the

grandparents, I respectfully dissent.

By statute, the legislature has allowed grandparents to petition for third party visitation rights. Miss. Code Ann. § 93-16-3 (1). The court may grant such visitation rights if it finds that the grandparents had established a viable relationship with the child and the parent had unreasonably denied visitation and if it finds that visitation rights of the grandparents with the child would be in the best interest of the child. Miss. Code Ann. § 93-16-3 (2)(a), (b). The exercise of grandparent visitation rights serves to facilitate a relationship between siblings and their grandparents. In this case, there is substantial evidence to support a finding that grandparent visitation is in the best interest of the children. The facts indicate that the children developed a good relationship with their grandparents and frequently visited their grandparents' home prior to Marvin and Donna Thornton's separation, with Donna's approval. Accordingly, there exists a substantial basis for finding that a viable relationship exists between the Adolphus and Fay Thornton and their grandchildren, Nicole and Shelby Lee, which is in the best interest of the grandchildren.

The majority argues that nothing within our Mississippi Code gives the grandparents the right to visitation absent a showing of harm to the children. Although the rights and duties of grandparents, as opposed to those of parents, are fundamentally different, there is nothing within this record to indicate that Adolphus and Fay Thornton do not meet the requirements of Miss. Code Ann. § 93-16-3. The only basis for the chancellor's denial of grandparent visitation appears to be fact that Adolphus and Fay Thornton testified on behalf of their son and recorded conversations between their son and their grandchildren. I submit that this does not constitute substantial evidence to support totally denying these grandparents the right to visitation with their grandchildren. Rather, Adolphus and Fay Thornton merely acted to preserve the interests of their grandchildren by maintaining telephonic visitation privileges.

Because the grandparents here have established a viable relationship with their grandchildren that is in the grandchildren's best interests, I dissent. I would reverse the decision of the chancellor below.

**LEE, C.J., JOINS THIS OPINION.**